Thank you, Judge. May it please the Court, Counsel. The issue in this case is actually very simple. It's whether the district court abuses discretion in granting restitution, which were not causally attributable to the offensive conviction, which was the filing of some false statements to the bank. This case involves a mandatory victim restitution act, and there are some primary rules under that which relate to the award of restitution. First of all, restitution must be related to the actual offensive conviction as a general rule. When the offensive conviction is an act of fraud, the court must look to whether the harm comes from the actual fraudulent act itself. And the test employed for that is a but-for test. The government has cited to the Court in its brief, Inree Fisher, and we agree that Inree Fisher is the appropriate test to use in revealing the district court's action in this case. And Inree Fisher says that it is a but-for causation test. That is, if the criminal act had not occurred, would the injury have occurred? And we believe in this case the record clearly proves that no, there is no cause relation between Mr. Benz filing of fraudulent statements to the bank and the eventual foreclosures on the bank, which led to the loss from the short sale and from the expenditures. Basically, what we have here is the foreclosures occurred several months after, upwards of a year after Mr. Benz filed his statements to the bank. And the statements to the bank were, in fact, his request for loan modification was denied, so the bank was never out any money at all. Most importantly, I think, for this Court's analysis is that there was no evidence of any kind of cause relation between Mr. Benz filing his statements to the bank and the eventual foreclosure. The record actually shows that the property in question was already behind its mortgage, and so the government's whereabouts never showed that there was an actual influence upon Mr. Benz's filing of the statements and the eventual foreclosure. It looked like it was a foregone conclusion. The Court wants to review the record closely. The agent in charge even said, I just don't know if there was a connection or not. I can't tell you that. One of the arguments the government makes is if not for Benz's loan application and modification, the foreclosure would have occurred sooner. What's your reaction to that? Is it just no evidence to support that, or is it a matter of concept that that would not be sufficient? Well, one can argue both, actually. First of all, there is no evidence to support that at all. What am I going to hear from the government? I'm sorry, sir? What am I going to hear from the government? What evidence is there that they will say does support it? I'm not sure there is any evidence, Judge, to be fair. I can't speak for the government, but there is no evidence in this record that it would have occurred sooner. There may be some speculation on the part of the agent, saying in general this may have occurred for the government that bone that the agent was speculating, but there was nothing hard saying that when I spoke with Countrywide Bank of America, they would have foreclosed this property X number of months sooner. Equally important, however, Judge, I direct the Court's attention to U.S. v. Randall, 157, Fed 3rd, 328. That's cited in our brief, but not highlighted. In that case, the Fifth Circuit rejected a claim there that the possible delay from filing, in that case filing bankruptcy petitions with false statements, caused harm in that. It would have maybe possibly hastened the foreclosure and allowed the government to recoup certain losses. So if that's the argument that's made, that there was some kind of effect in delaying the foreclosure, first of all, again, there's no evidence of that at all. But Randall seems to say, well, that's not enough to merit restitution. I believe we think there is, errantly in your view, some evidence of that. Is there any evidence to support that the damage was greater as a result of a delay? There's no evidence at all as to what the damage would have been, delay or no delay. Again, I think that there's, it would be pure speculation to find that there was any greater or lesser amount. We don't know. The property was going into foreclosure when Mr. Benz acquired it. And his statements to the bank were an independent act which had no effect, no provable effect, upon the eventual foreclosure. And that's really only the Court needs to know about and consider under the appropriate test. So there just is no evidence that there's any kind of effect, any kind of causal relation between the filing of his false statements and the eventual foreclosure. Can you see a scenario where there might be a situation where his false loan application did delay the foreclosure which affected the ultimate price that HUD had to pay? Well, Judge, you have to have evidence of that before you can find that. Again, I understand the Court's concern. But under the test that binds this Court, Fisher, you have to have evidence reviewing lower courts. Findings have to be based upon evidence, clear evidence. And, well, a preponderance of the evidence. And the State never, I'm sorry, the government never proved anything of this amount. So theoretically speaking, had the agent been able to say, well, yes, I've analyzed this, I spoke with the bank, and here's the action that they took, and here's how they delayed this, then quite possibly one could say, well, there is a possible causal effect. But, again, he'd have to prove the actual harm to boot. How much did it cost them? I suggest that under the Randall case, it doesn't matter if it delayed. But it boils back down to the point that you have to show some kind of harm in order to justify the restitution amount. In this case, we don't have that harm. We don't have the amount of harm. We don't have, and most importantly, we don't have the causation that shows the harm. And so I think the Court's concern is more in the theoretical sphere that may be appropriate for another case where the government proves this burden to show that there was some causal effect in, between the act of fraud and the eventual harm that was done. If this case, if the sentence or the restitution was incorrect, or would it get remanded, and is the government given an opportunity to try to show part of that money was as a result of the false loan application and it caused a delay and that maybe the HUD would be entitled to some restitution for part of the amount? No, Judge. It's our position that the government got its butt at the apple when this case was remanded originally to have them prove up that point. Our position is it's a legal challenge that the judge made an error, a legal error, in assigning restitution at all based upon the lack of evidence. So you can't just send the case back repeatedly for them to prove this up. So it's our position that the restitution award should be vacated entirely. Now, your client made some money off of this. He was getting money from the people who originally had the mortgage. Could they be victims? Judge, I think the immediate answer would be no because they were not part of, they weren't unrelated to the act of fraud. Again, we didn't focus under the Fisher test as to the crime itself. And the evidence presented to the court at the time was that there was no relevant content that was discussed. Judge, when you say the crime itself, what you mean is you've got to focus on the crime for which he was convicted. Yes, sir. Which is to say there may have been other crimes, but in this case, the only crime of conviction is the false application. That's correct, Judge. Correct. Again, one of the exceptions to the rule of restitution is that when there's a scheme, a pattern, a conspiracy, one can include relevant conduct, but we did not. He was not convicted of defrauding the people that owned the house. No, sir. It was a false loan application. And you're saying those two are not related, so if he ripped off the people that owned the house, that's a totally separate crime that there should not be restitution for this specific conviction? That's correct, Judge. Under the law, it's well established. Restitution only applies to the act of conviction, the offense of conviction. The offense of conviction was a false statement to the bank for the purpose of obtaining credit. And then one has to focus upon whether the offense of conviction, the fraud itself, led to damage against the victim. Under the way the case was pled, the families who, unfortunately, were out of some money, the Armendingers and the Gonzolas, I don't think they would constitute victims under the MVRA as the case was pled. Now, possibly they could constitute victims if the case was pled differently. But again, that's out in the theoretical weeds of this case here. I think we're expanding the nature of this issue beyond what needs to be looked at to resolve this case. The law is pretty well established in this issue right here. And so, largely the court's concerned about the other individuals there. The court needs to resolve this case the way the law requires it, which is basically focused upon the offense of conviction, which is the false statement. And the victim being either the bank, or in this case, HUD, standing in for the bank. Because the claim of the government was that, at the time that we had the hearing, was that the damage was caused by his filing of those false statements. And again, it all boils down to whether the judge could make that finding based on the evidence in the room, and it couldn't. So, we request the court to vacate the restitution order in this case. And if you have any other questions, I'll see the rest of my time at the state, the government. Thank you. Thank you, Mr. Coughlin. You've reserved some time for rebuttal. Mr. Gay? Good morning. May it please the court. This is a complicated case where Mr. Binns executed a scheme to defraud tens of thousands of dollars out of unsuspecting individuals and Bank of America. As a part of that scheme, in order to buy time, in order to defraud more individuals out of their money, he went to Bank of America and sought to extend the terms of the loan by misrepresenting himself as the original borrower and by submitting false documents to support the loan modification. That loan modification never occurred. Bank of America turned it down. He collected over $32,000 during this time period. He sent Bank of America approximately $4,900. But we know that the only reason why he filed this motion to modify the loan was not to help the homeowners who had left the property a long time ago, but it was to perpetuate his scheme to defraud. In the end, the district court found only that Bank of America and its successor, HUD, was a victim of a direct, the court finds, a direct victim of the total amount of loss, which was about $54,000. And that's what the district court found in this case. So that's where we are. Under the MVRA, doesn't the loss have to be one which is foreseeable from the conduct of the defendant on the offense of conviction? Absolutely. That's spoken in the Fisher case. That's correct. All right. And so you maintain that it was foreseeable that the filing of a false loan application would lead to HUD, the insurer, suffering a loss when the property ultimately was sold for less than the amount due on the note. It was certainly in my mind foreseeable that while you're collecting money, payments that are supposed to be forwarded under the terms of the deal that he had with the people, that the bank is, that those funds would have offset any loss at the end if there was a default on the loan. I think that is foreseeable. I think that is completely foreseeable, that if you're pocketing the money that you know should be satisfying the loan, that in the end, when the loan goes up — You filed a false loan application with the bank. That's correct, Your Honor. And the bank didn't lose any money, did it? Well, its successor, HUD, did. HUD is the insurer of the loan. And I think that — The bank didn't lose any money, though, did it? The bank did not lose any money as a direct result because it has federal insurance through HUD to cover the amount of the loss. Randall, which Appellant cites in his brief, I think is somewhat distinguishable because here it's clear, I think, from the record that the only reason, and there is testimony from the agent about this, the only reason why you seek that modification is to basically forestall foreclosure, and that is a direct reason why he does this is so that he can perpetuate his scheme. And so this case is somewhat unusual, in my mind at least, because he is filing this false statement with the bank to perpetuate a larger scheme to defraud. And so under that unique circumstance, the question, I think, becomes then, is he responsible for the losses? Well, you're saying, though, he did it to forestall the foreclosure. Inevitably, if you don't make — I think it's foreseeable that if you don't make payments on the loan, eventually the loan will be called. So, yes, I think that's why he's doing it. So he's trying to stop the foreclosure or delay it. He's trying to delay. Now, even if we assume that, what evidence was there that the delay resulted in a loss to HUD, and it was the delay which resulted in the loss? In all candor, the only evidence in the record regarding that question is the total amount that was suffered, and that's the only thing we know. The record does not disclose any separating out of time periods what would have happened in June, what would have happened in July, what would have happened in August. So if the foreclosure was inevitable, it looked like these people weren't paying their loan, and there was eventually going to be a foreclosure, and HUD was going to have to pay, how do we know how much of it would have happened anyway, and HUD would have had to pay, and there's no victim because it was something that HUD did. He had to pay off the foreclosed loans, and these people weren't paying their house payments. In this case, the district court, I think, basically assumed under sort of like an intended loss theory, I think is how it went, that the total amount, in other words, that by criminalizing, basically the government argued below that this whole thing was, he criminalized this thing as part of his scheme, and so in the end when it all goes bad, this is what the government or HUD suffered the loss, and that was the amount the district court found. The agent was clear that he could not parcel out or didn't have that information with him as to what would have happened had there been some accounting, and I don't know that any accounting was possible, but he was clear that there's a difference between delinquency and foreclosure, and that many people are delinquent on their loan and never go into foreclosure. What brings about the foreclosure is the collecting of those tens of thousands of dollars and not forwarding them on as payments as he had promised other individuals to do. But, counsel, you say that, but these are loans where people were delinquent when Benz got involved. I mean, he targeted people who were delinquent, didn't he? Absolutely. So they were on the road to a foreclosure. We don't know whether or not they would have remained on that road, but that's where they were headed. I can't dispute that these people were in arrears when he reached out and was supposedly going to help them, which, of course, in the end, you know, this is just one property, the Red Deer Way. There were many victims in many properties. Counsel, it seems to me the problem is that regardless of the scheme, what we're looking at is the conviction. And the conviction has to be what led to a $50,000 or some other loss to HUD. And so far I'm not hearing the causal relationship. I'm hearing a causal relationship that may have increased the amount of loss, but no evidence to support that. It seems quite plausible to me, but no one broke that down, as you as indicated. I'm not asking you to concede that that's fatal to your argument, but isn't it undermining your argument that you don't have this sort of for the quid of the filing of a false application, you have the quo of this loss? I think ultimately this court has to decide whether the district court's use of the entire amount of loss was appropriate under Fisher. And admittedly, I think it would have been preferable had there been evidence that would have segregated out. What we do know for sure, and what I think is interesting in this, and maybe I disagree, by the way, on the question of whether if there's an error in the district court's handling of its calculation, I think it results in a remand. Personally, I don't believe that this court can just or should just excise the restitution order. There are numbers in this record which show that as part of this scheme, he collected over $32,000. He paid the bank only about $4,000. And if that loan modification allowed him to collect those monies and those monies had been transferred to the bank, then it could have been reduced from the $54,000. I think there is some methodology there that maybe we get to a more accurate number if this court finds that the total amount is overbroad. But in a case which had been remanded already, on the issue of restitution, the government should have been on notice that if you have any evidence to support your claim for restitution, you need to offer it up. In looking back, and I believe we have looked back at the original opinion, of course, there was a whole larger discussion of the opinion was really about relevant conduct. And at the very end, there was a smaller section on restitution. And I believe that the government, the trial of USAID, based on his comments before the district court, believed that he had an argument to say that he thought he could make the argument that Mr. Bin should be responsible for the entire amount. I think that that is to say that the opinion, I think that in this case, the government and the district court operated under the theory that the way they proceeded was sufficient. And the district court clearly didn't buy the idea that we're going to hit all of the victims, which the government actually had argued for. The government, ultimately, the district court simply awarded the $54,000, which was the amount due HUD, and not the other victims. And it seems to me that I think one of the other questions earlier was whether maybe those other victims could even reasonably fall within that. I think that may be a tougher question. Although, there is this foreseeability question, Judge Graves, as you recognize, that at some point we look at whether it would be foreseeable that as a result of the conduct that there would be this loss. And on some level, I think that at least as to collecting monies from these individuals and not forwarding it, ultimately not paying, that the loan is going to go into default, and that had those funds been transmitted, it would have either mitigated the amount or maybe eliminated it entirely. And I think that's where the tension is on this record. Counselor, your argument seems to say that perhaps, I forget if the number is $32,000, whatever it is that he took from these victims and only paid some of it to the Bank of America, that that's actually what Bank of America and HUD were out, that that's money that should have been forwarded on to Bank of America, but he kept it, $28,027. But the problem I have with that is that his filing of the loan application assisted his collecting that money, but the loss to HUD was not because he filed a loan application. It's an indirect effect of it. But he wasn't charged with, convicted of, and seeking restitution for having swindled these individuals and not sent their money on to HUD. And that disconnect to me is the problem in the argument that you're making. I guess on some level it seems unusual that someone would be able to pocket the ill-gotten gains that, at the expense of the collateral holder, and there be, and it may be that there is no remedy for HUD. It may be that he does get to keep the money. But it strikes me that when you execute a scheme, and that as part of that scheme, you attempt to lull the bank to giving you more time so that you can perpetuate your scheme, and you get to keep all of those ill-gotten gains. It seems to me that that's what the district court was trying to address in this case. Well, but the remedy would be you get them to plead guilty to more than just one offense. Point well taken. All right. Thank you, Counsel. If there are no further questions, we can concede back my time. No more? Okay. Thank you. You all may be excused.